UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CIARA S. WRIGHT,

                                                        **REPORT AND**
                                                        **RECOMMENDATION**

                        Plaintiff,

                                                        12-CV-440
                                                        (MAD/VEB)

        V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                        Defendant.

_____

# I. INTRODUCTION

In November of 2006, Plaintiff Ciara S. Wright applied for Supplemental Security

Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been

unable to work since August of 2005 due to physical and emotional impairments. The

Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, the Olinsky Law Group, Howard D. Olinsky,

Esq., of counsel, commenced this action on March 12, 2012, by filing a Complaint in the

United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff

seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405

(g) and 1383 (c)(3).

On March 22, 2013, the Honorable Gary L. Sharpe, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner.
The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this
matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for SSI benefits on November 15, 2006, alleging disability beginning on August 15, 2005. (T at 249, 291, 361).[2]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on February 12, 2009, in Syracuse, New York before ALJ F. Patrick Flanagan.  (T at 63).  Plaintiff, represented by counsel, appeared and testified.  (T at 70-102). On May 28, 2009, ALJ Flanagan issued a written decision denying Plaintiff's application (the "ALJ's first decision"). (T at 138-48).  Plaintiff requested review by the Social Security Appeals Council.

On December 23, 2010, the Appeals Council remanded the application for further proceedings. (T at 149-152).  A second administrative hearing was held on July 11, 2011, also in Syracuse.  Plaintiff appeared with her attorney and provided additional testimony. (T at  108-113).  Testimony was also received via telephone conference from a vocational expert. (T at 114-34).  On August 31, 2011, ALJ Flanagan issued a written decision denying Plaintiff's application for benefits (the "ALJ's second decision"). (T at 22-43).  The ALJ's second decision became the Commissioner's final decision on January 12, 2012, when the Appeals Council denied Plaintiff's request for review.  (T at 5-10).

Plaintiff, through counsel, timely commenced this action on March 12, 2012. (Docket No. 1).  The Commissioner interposed an Answer on July 30, 2012. (Docket No. 7).

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

Plaintiff filed a supporting Brief on August 26, 2012. (Docket No. 10). The Commissioner filed a Brief in opposition on November 21, 2012. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and that this case be dismissed.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B. Analysis

### 1. Commissioner's Decision

#### a. ALJ's First Decision

In his first decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date she applied for benefits, November 15, 2006. (T at 143). The

---

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

ALJ found that Plaintiff had the following severe impairments: schizophrenia, paranoid type; depressive disorder; borderline intellectual functioning; and substance abuse. (T at 143-45). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 145-46).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, except that she had moderate limitations with regard to performing complex tasks and would have "some trouble dealing with high levels of work-related stress," such that a "low-stress work environment" was recommended. (T at 146-47). The ALJ determined that Plaintiff was capable of performing her past relevant work as a home health care aide. (T at 147-48). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the application date to the date of his decision, June 2, 2009. (T at 148).

### b.    Appeals Council Remand

On December 23, 2010, the Appeals Council issued an Order finding that the ALJ's past relevant work determination was not supported by the evidence. In particular, the Appeals Council concluded that the earnings record did not establish that Plaintiff had performed substantial gainful activity during the previous fifteen years. (T at 151). As such, the Appeals Council remanded that matter and directed the ALJ to obtain additional evidence regarding whether Plaintiff's employment as a home health care aide was performed at a level sufficient to render it substantial gainful activity. (T at 151). If the ALJ determined on remand that Plaintiff's employment did not constitute substantial gainful activity, the Appeals Council directed him to proceed to step five of the sequential

evaluation process and obtain evidence from a vocational expert. (T at 151-52).

### c. ALJ's Second Decision

In his second decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date she applied for benefits. (T at 27). The ALJ found that Plaintiff had the following severe impairments: schizophrenia, paranoid type; depressive disorder; borderline intellectual functioning; and substance addiction disorder. (T at 27-30). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that mets or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 30-31).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, except that she could relate to co-workers, supervisors, and the public on a 1:1 basis "occasionally to frequently but not constantly." (T at 31-32). The ALJ determined that Plaintiff was not able to withstand the stress of fast-paced production requirements or perform work involving negotiation, confrontation, or responsibility for the safety of others. (T at 31-34).

On remand, the ALJ found that Plaintiff had no past relevant work. (T at 34). Considering Plaintiff's age (21 years old on the date the application was filed), education (limited), work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 35-36). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the application to the date of his decision, August 31, 2011. (T at 36-37).

As noted above, the ALJ's second decision became the Commissioner's final

decision on January 12, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 5-10).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of this position. First, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. Second, she challenges the ALJ's credibility assessment. Third, Plaintiff argues that the ALJ's step five analysis was flawed. This Court will address each argument in turn.

### a. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the RFC to (1) relate to co-workers and

supervisors and the public on a 1:1 basis occasionally to frequently, but not constantly and (2) withstand routine work expectations and production quotas, provided she was not required to withstand fast-paced production requirements, such as a factory assembly line. The ALJ determined that Plaintiff could not perform work requiring negotiation, confrontation, or responsibility for the immediate safety of others (e.g. lifeguard or crossing guard). Lastly, the ALJ found that Plaintiff had not established any significant limitations with regard to her physical RFC. (T at 31).

Plaintiff challenges this finding, pointing principally to a Medical Source Statement dated March 23, 2009, completed by Kristen Miguel, a treating social worker, and co-signed by her supervising physician (whose signature is illegible). Ms. Miguel diagnosed schizophrenia, paranoid type, and noted that Plaintiff experienced auditory and visual hallucinations, along with "delusions of a paranoid nature." (T at 551). She also found that Plaintiff suffered from "extreme anxiety, mood swings and anger/aggression." (T at 551).

Ms. Miguel opined that Plaintiff had an "unlimited or very good" ability to remember work-like procedures; respond appropriately to changes in a routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions. (T at 553). She assessed a "limited but satisfactory" ability to understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual with customary, usually strict tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; set realistic goals or make plans independently of others; and deal with stress of semiskilled and skilled work. (T at 553-54).

Ms. Miguel assessed that Plaintiff was "seriously limited, but not precluded" from

completing a normal workday and workweek without interruptions from psychologically based symptoms; understanding and remembering detailed instructions; and carrying out detailed instructions. (T at 553-54). Ms. Miguel opined that Plaintiff had "no useful ability to function" with respect to her ability to maintain attention for two hour segments; work in coordination with or proximity to others without being unduly distracted; perform as a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (T at 553).

Ms. Miguel also determined that Plaintiff had no useful ability to function with regard to interactions with the general public or using public transportation. (T at 554). She also opined that Plaintiff would be unable to meet competitive standards in terms of maintaining socially appropriate behavior. (T at 554).

The ALJ afforded little weight to the assessment provided by Ms. Miguel and co-signed by her supervising physician. (T at 34). This Court finds the ALJ's decision to discount the assessment is supported by substantial evidence and consistent with applicable law.

First, at the time of the assessment, Plaintiff began treating with Ms. Miguel and her supervising physician on February 2, 2009, less than two (2) months before the March 23, 2009 assessment. (T at 551). It is not clear whether the treating physician ever actually examined Plaintiff or whether the doctor simply reviewed Ms. Miguel's notes. It appears Plaintiff did not seek any treatment from Ms. Miguel or her supervising physician after the March 23, 2009, checklist report was provided. (T at 34). The length of the treatment

relationship is a relevant factor for the ALJ to consider when weighing a treating source's opinion. See 20 C.F.R. § 416.927 (d)(2)(i)("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."); see also SSR 06-03p.

Second, the Miguel assessment was in "checklist" form and was not supported by any clinical findings or objective evidence. There also is no evidence that Plaintiff treated with Ms. Miguel or her supervising physician after the checklist was completed. Although the assessment includes a diagnosis of schizophrenia, paranoid type, it does not contain a detailed patient history or mental status examination.

The lack of supporting detail and/or objective findings provides a further reason for affording the opinion less weight. See 20 C.F.R. §§ 404.1527(d)(3) and 416. 927(d)(3). ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); see also Halloran v. Barnhart, 362 F.3d 28, 31 n. 2 (2d Cir. 2004)(describing standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); Llorens-Feliciano v. Astrue, No. 11-CV-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012)("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")(quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)).

The Court is left with the conclusion that the Miguel assessment is based almost exclusively on Plaintiff's subjective complaints. Although such complaints are an essential diagnostic tool, they should not form the entire basis for a provider's findings or be unconditionally accepted in the absence of clinical findings or supporting observations. See Aldrich v. Astrue, No. 08-CV-402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009).

Third, the Miguel assessment is internally inconsistent and contradicted by Plaintiff's reported activities of daily living. For example, the assessment reported that Plaintiff had "no useful ability" to maintain attention for a two hour segment, but at the same time, indicated that Plaintiff had a satisfactory ability to sustain an ordinary routine without special supervision and found that she was not precluded from completing a normal workday and workweek without interruptions from psychologically based symptoms. (T at 553). The assessment indicated that Plaintiff had "no useful ability" to use public transportation (T at 553), but Plaintiff reported that she used public transportation. (T at 459). The Miguel assessment suggested that Plaintiff had "no useful ability" to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes (T at 553), although Plaintiff reported that she "gets along well with friends and family" and "enjoys doing hair, nails, . . . playing on the internet, and talking on the phone." (T at 460, 588).

Fourth, the dramatic limitations set forth in the Miguel assessment are inconsistent with other evidence in the record, including contemporaneous treatment notes. (T at 381 - "Her thought process is goal directed . . . Her cognition is intact and insight and judgment are good.")(T at 451 -described as "cooperative and . . . of average intelligence" with "slightly anxious mood and an appropriate affect")(T at 459 - "Her thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered

12

thinking")(T at 489 - described as looking "very good" with significant improvement in psychiatric conditions, with minimal side effects from medication)(T at 491 - mood described as "normal" with no indication of hallucinations, delusions, or impaired judgment)(T at 498 - "cooperative attitude and appropriate affect")(T at 588 - "cooperative" attitude, appropriate affect, normal thought content, intact insight, with some judgment impairment).

This Court considered whether a remand to allow the ALJ to re-contact the supervising physician is warranted. However, there appears to be no dispute that the treating relationship with Ms. Miguel (the social worker) was very brief (less than two months) and there is no evidence that it even involved the supervising physician to any significant extent. It is thus not clear that the supervising physician would be able to provide much greater insight than what was already provided. Moreover, the record is well-developed, containing mental status examinations, contemporaneous treatment notes, reports of Plaintiff's activities of daily living, and assessments by a consultative psychiatric examiner and a State Agency review consultant. See Hogue v. Barnhart, No. 03-CV-4963, 2005 WL 1036336, at *14 (S.D.N.Y.2005) ("An ALJ need not seek further explanation from treating physicians each time there is an inconsistency in medical opinions."); Rebull v. Massanari, 240 F. Supp.2d 265, 273 (S.D.N.Y.2002)(noting that the ALJ's responsibility to weigh the evidence would be "rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his opinion to the evidence.").

This Court is mindful that the record contains evidence of serious difficulties with regard to functioning, including several Global Assessment Functioning ("GAF") scores of

35 and 40 (T at 487, 491, 590).[5] However, these GAF scores were generally initial assessments rendered when Plaintiff was being admitted for substance abuse treatment (as opposed to opinions rendered by providers with an established treating relationship). One of the scores (a score of 35 given in April of 2011) was contradicted by its own mental status examination, wherein Plaintiff was described as cooperative, calm, appropriate, and fully oriented. (T at 588). Another of the scores (a score of 40 assessed in April of 2006) was given even though Plaintiff was described as well-groomed, cooperative, fully oriented, and with intact thought process, self-perception, and judgment. (T at 491). Moreover, the significant limitations suggested by the GAF scores were contradicted by the evidence outlined herein, including contemporaneous treatment notes, Plaintiff's reported activities of daily living, and the assessments of the consultative examiner and State Agency review consultant.

The ALJ carefully considered the GAF scores, finding that they were entitled to "little weight," as they were contradicted by the clinical findings in the record and Plaintiff's activities of daily living (including, in particular, Plaintiff's ability to live independently and maintain her family in the community).(T at 29, 34) "Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. If the Commissioner's decision "rests on adequate

---

[5]The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004). A GAF score of 31-40 indicates "major impairment" in social or occupational functioning. See Hendrickson v. Astrue, 11-CV-927, 2012 WL 7784156, at *8 n. 12 (N.D.N.Y. Dec. 11, 2012).

findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.

Fifth, the ALJ's RFC determination was supported by the assessments of the psychiatric consultative examiner and State Agency review consultant. Dr. Dennis Noia, the consultative examiner, described Plaintiff as cooperative, with intact attention and concentration. (T at 459). Plaintiff told Dr. Noia that she attended to personal care needs, cooked and prepared foods, cleaned, did laundry, shopped, managed money, drove, and took public transportation. (T at 459). She reported that she was taking care of her young daughter and working toward her GED. (T at 460).

Dr. Noia concluded that Plaintiff appeared to be capable of understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; and maintaining attention and concentration for tasks. (T at 460). Dr. Noia determined that Plaintiff could regularly attend to a routine and maintain a schedule, learn new tasks, and make some appropriate decisions. (T at 460). Dr. Noia noted Plaintiff's history of difficulty dealing with stress, but concluded that she could relate to and interact moderately well with others. (T at 460).

Dr. M. Morog, the State Agency review consultant, concluded that Plaintiff was capable of unskilled work, and, in general, found Plaintiff to be not significantly limited with respect to her understanding and memory, concentration and persistence, social interaction, and adaption. (T at 480-82).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§

404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2);

see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9

(S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation

of medical issues in disability claims. As such, their opinions may constitute substantial

evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these

examining and non-examining State agency medical consultants  are supported by the

weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14

(E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be

considered where they are supported by evidence in the record).

As such, this Court finds no reversible error with regard to the ALJ's RFC

determination.  The ALJ's decision to discount the assessment prepared by Ms. Miguel and

co-signed by her supervising physician was supported by substantial evidence.  The

assessment was based on a relatively short treating relationship and was not supported

by clinical findings, a detailed history, or a mental status examination.  The treatment notes

and reports of the consultative examiner and State Agency review physician provided

further support for the ALJ's findings with respect to Plaintiff's RFC and his decision to

discount the Miguel assessment.  In combination, this constitutes "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

### b.    Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are

an important element in disability claims, and they must be thoroughly considered. Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See, e.g., Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: She had a four year old daughter and was pregnant with her second daughter on the date of the first hearing, February 12, 2009. She lived with her daughter in an apartment. (T at 71). For most of 2005, she worked as a home health care aide. (T at 74). She periodically suffers from back pain. (T at 77). She cannot sustain focus and experiences racing thoughts and paranoid feelings. (T at 78-79). She has fear of public places and crying spells. (T at 79). She experiences auditory hallucinations. (T at 80-81). At the time of the first hearing, she was on probation related to an assault conviction. (T at 83). She is her daughter's primary caregiver. (T at 84-85).

She does her own grocery shopping. (T at 87). She has close relationships with her family. (T at 87). Migraine headaches lasting several hours occur three to four times a week. (T at 88-89). She has a short temper and difficulty relating to others. (T at 93).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effect of the symptoms were not credible. (T at 32). This Court finds the ALJ's assessment supported by substantial evidence. Plaintiff's testimony concerning her impairments was inconsistent with the contemporaneous treatment notes, which (as discussed above) generally described Plaintiff as cooperative, goal-directed, with coherent thought processes and orientation. In addition, Plaintiff's ability to perform a wide range of activities of daily living, including child care and maintaining social relationships contradicts the assertion that her psychiatric impairments precluded her from performing basic work activities. Lastly, the reports of the consultative examiner and State Agency review consultant provided further support for the ALJ's credibility determination.

Again, the record does contain evidence consistent with Plaintiff's claims of disabling psychiatric limitations. (T at 293, 548). However, "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints . . . ." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit

of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's credibility assessment should therefore be upheld.

### c.    Vocational Expert

During the second administrative hearing, the ALJ elicited testimony from Louis Szollosy, Jr., a vocational expert. Mr. Szollosy considered whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. He opined that there were such jobs and identified several: packager, domestic laundry worker, and sorter, although he indicated that the number of jobs available for each of these occupations should be reduced by 25% given the extent of the limitations. (T at 35, 117-19). The ALJ accepted this assessment in connection with his step five analysis. (T at 35-36).

Plaintiff challenges the ALJ's decision. Plaintiff notes that the ALJ incorrectly stated that her attorney did not offer his own hypothetical to the vocational expert. In fact, counsel did pose a hypothetical questions at the second hearing. (T at 132-33). However, the hypothetical was based on the Miguel assessment, which the ALJ afforded little weight in any event. As such, any error in the ALJ's recollection of counsel's questioning of the

vocational expert was harmless.

Plaintiff also contends that the ALJ should have accepted the opinion of Victor Alberigi, a vocational expert retained by her attorney. Mr. Alberigi submitted a letter questioning the data and methodology used by Mr. Szollosy. (T at 367-69). The ALJ considered this opinion, but concluded that Mr. Alberigi had misunderstood the nature of the limitations presented in the ALJ's hypothetical to Mr. Szollosy. (T at 36). The ALJ also discounted the credibility of Mr. Alberigi's opinion because his testimony had been solicited by Plaintiff's counsel. (T at 36). The ALJ acted within his discretion in weighing the competing opinions of the vocational experts and this Court finds no reversible error with regard to this aspect of the ALJ's decision.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiner, and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,



Dated: June 4, 2013

     Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY

Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 4, 2013

Victor E. Bianchini
United States Magistrate Judge