**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CIARA S. WRIGHT,**

                **Plaintiff,**

     v.                                       5:12-CV-0440
                                                  (MAD/VEB)

**CAROLYN W. COLVIN, Acting Commissioner**
**of Social Security,**

                **Defendant.**

---

**APPEARANCES:**                              **OF COUNSEL:**

Olinsky Law Group                        Howard D. Olinsky, Esq.
One Park Place
300 South State Street, Suite 420
Syracuse, NY 13202
*Attorney for Plaintiff*

Social Security Administration          Jeremy A. Linden, Esq.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, NY 10278
*Attorney for Defendant*

**MAE A. D'AGOSTINO, U. S. DISTRICT JUDGE**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

     Plaintiff Ciara S. Wright brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking a review of the Commissioner of Social Security's decision to her application for Supplemental Security Income ("SSI"). This matter was referred to United States Magistrate Judge Victor E. Bianchini for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.3(d). Magistrate Judge Bianchini recommended that the

Commissioner be granted judgment on the pleadings and that plaintiff's motion for judgment on the pleadings be denied. (Dkt. No. 17). Presently before the Court is plaintiff's objection to the Report and Recommendation (Dkt. No. 18). Defendant has responded to plaintiff's objection. (Dkt. No. 19).

## PROCEDURAL BACKGROUND

On November 15, 2006, plaintiff filed an application for SSI benefits. (Administrative Transcript at p. 249, 291, 361 ).[1] Plaintiff was 21 years old at the time of the application with prior work experience as a cashier and home health aide. (T. 72-75). Plaintiff claimed that she was disabled due to schizophrenia, drug abuse, bipolar disorder, cancer, a learning disability and knee and ankle injuries. (T. 295). On February 23, 2007, plaintiff's application was denied. After remand from the Appeals Council, plaintiff appeared for a second hearing before an ALJ on July 11, 2011. On August 31, 2011, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 22-43). The Appeals Council denied plaintiff's request for review making the ALJ's decision the final determination of the Commissioner. This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

---

[1] "(T. )" refers to pages of the administrative transcript. (Dkt. No. 8).

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

The ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her filing date. (T. 27). At step two, the ALJ concluded that plaintiff suffered from schizophrenia, paranoid type; depressive disorder; borderline intellectual functioning; and substance addiction disorder which qualified as "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). (T. 27). At the third step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 30). The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "relate to co-workers and supervisors and the public on a 1-1 basis occasionally to frequently but not constantly. She can withstand routine work expectations

and production quotas, but is unable to withstand the stress of fast-paced production requirements such as a factory assembly line. She cannot do work involving negotiation, confrontation or responsibility for the immediate safety of others, such as lifeguard or school crossing guard. The claimant has failed to satisfy her burden of establishing that she has any significant limitations on her physical residual functional capacity". (T. 31). At step four, the ALJ concluded that plaintiff did not have any past relevant work. (T. 34). At step five, the ALJ elicited testimony from a vocational expert who concluded that there were jobs in the national economy that plaintiff could perform including: packager, domestic laundry worker, and sorter. (T. 35). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 35).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ's RFC determination is not supported by substantial evidence; (2) the ALJ improperly assessed plaintiff's credibility; and (3) the ALJ's step five analysis was flawed. (Dkt. No. 10).

**I.  Report and Recommendation**

In the Report and Recommendation, Magistrate Judge Bianchini found that the ALJ's RFC determination was supported by substantial evidence. The Magistrate Judge reasoned that the ALJ properly assigned "little weight" to a Medical Source Statement ("MSS") prepared by Kristen Miguel, LMSW, and co-signed by her supervising physician because the assessment was based on a relatively short treating relationship and was not supported by clinical findings, a detailed history, or a mental status examination. Moreover, the Magistrate Judge found that the treatment notes and reports of the consultative examiner and State Agency review physician provided

further support for the ALJ's findings with respect to plaintiff's RFC and his decision to

discount the Miguel's assessment. The Magistrate Judge also found that the ALJ properly evaluated plaintiff's credibility and rendered an independent judgment regarding the extent of plaintiff's subjective complaints based on the objective medical and other evidence. Finally, the Magistrate Judge concluded that the ALJ acted within his discretion in weighing the competing opinions of the vocational experts. The Magistrate Judge recommended that the Commissioner's motion for judgment on the pleadings be granted.

## II.     Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether plaintiff is disabled. Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Pursuant to 28 U.S.C. § 636(b)(1), this Court engages in a *de novo* review of any part of a Magistrate's Report and Recommendation to which a party specifically objects. Failure to object timely to any portion of a Magistrate's Report and Recommendation operates as a waiver of further judicial review of those matters. *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "Where objections are 'merely perfunctory responses,' argued in an attempt to 'engage the district court in a rehashing of the same arguments set forth in the original petition,' reviewing courts should review a report

and recommendation for clear error." *Edwards v. Fischer*, 414 F.Supp.2d 342, 346–67 (S.D.N.Y. 2006) (quoting *Vega v. Artuz*, 2002 WL 31174466, at *1 (S.D.N.Y. 2002)).

Plaintiff presents specific objections to the Report and Recommendation and asserts that the ALJ improperly assigned little weight to Miguel's opinion because it is consistent with objective evidence and the opinions expressed by another treating source. Plaintiff also claims that the ALJ failed to consider the observations of an SSA interviewer when analyzing plaintiff's credibility. Finally, plaintiff asserts that the ALJ failed to present a proper hypothetical to the vocational expert because the ALJ's RFC analysis lacks substantial evidence. Defendant responds that plaintiff has improperly repeated her arguments previously presented on her motion for judgment on the pleadings as objections to the Report and Recommendation. The Court has reviewed plaintiff's initial brief and the objections to the Report and Recommendation and is satisfied that plaintiff provided specific objections to the proposed findings and recommendations. Even assuming that plaintiff presented general objections and restated original arguments, the Court must still review the Report and Recommendation for clear error. *See Salmini v. Astrue*, 2009 WL 1794741, at *1 (N.D.N.Y. 2009).

## III. RFC

Residual functional capacity is:

> "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96–8p"), 1996

WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e).

Here, the ALJ found that plaintiff had the RFC to:

> relate to co-workers and supervisors and the public on a 1-1 basis occasionally to frequently but not constantly. She can withstand routine work expectations and production quotas, but is unable to withstand the stress of fast-paced production requirements such as a factory assembly line. She cannot do work involving negotiation, confrontation or responsibility for the immediate safety of others, such as lifeguard or school crossing guard. The claimant has failed to satisfy her burden of establishing that she has any significant limitations on her physical residual functional capacity. (T. 31).

Plaintiff claims that the RFC is unsupported by substantial evidence because the ALJ failed to assign appropriate weight to the MSS prepared by Social Worker Miguel and co-signed by a physician. Plaintiff claims that the assessment is supported by objective findings that plaintiff was "angry, anxious and depressed". Plaintiff also argues that Miguel's assessment is supported by the assessment of another social worker and that the ALJ improperly considered plaintiff's cessation of treatment when analyzing the MSS. (Dkt. No. 18, p. 1-2).

The Second Circuit has defined a treating physician as one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Coty v. Sullivan*, 793 F.Supp. 83, 85–86 (S.D.N.Y.1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir.1988)).

Social Security Ruling 06–03p provides:

7

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
>
> • Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists ...;
>
> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06–03p, 2006 WL 2329939, at *2–3 (S.S.A. 2006).

Opinions from medical sources that are not considered acceptable medical sources are "important and should be evaluated on key issues such as impairment severity and functional effects." *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y.2009) (quoting SSR 06–03p). The Regulations provide that the Secretary will consider, "evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. § 404.1513(e). In weighing the opinions of "other sources", the ALJ must use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. § 404.1527(d). *Canales v. Comm'r of Soc. Sec*., 698 F.Supp.2d 335, 344 (E.D.N.Y.2010).

On March 23, 2009, Kristen Miguel, LMSW, completed a Mental Residual Functional Capacity Questionnaire. (T. 551). Miguel indicated that she began treating plaintiff on a weekly basis beginning on February 2, 2009 and that she had performed monthly medication reviews commencing in March 2009. (T. 551). Miguel discussed plaintiff's symptoms, side effects from

8

medication and impairments as "reported by Ciara". According to plaintiff, she suffered from poor memory, concentration, social anxiety, aggressiveness and hallucinations. (T. 554). Miguel noted that plaintiff was pregnant and that it was a "high risk" pregnancy. With respect to treatment, Miguel noted, "[b]eginning state of weekly therapy, rapport building and goal setting".

The ALJ discussed Ms. Miguel's opinions and provided specific reasons for refusing to assign it "significant weight". (T. 34). Based upon the Regulations, Ms. Miguel is not a treating source subject to the treating physician rule. Social workers are defined as "other sources" whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight. 20 C.F.R. § 416. 913(d)(1). Moreover, while the MSS was co-signed by a physician, the Court could find no evidence that the unidentified physician had a treating relationship with plaintiff. *Towers v. Astrue,* 2010 WL 3338724, at *4 (N.D.N.Y. 2010). There is no evidence that the physician ever personally examined plaintiff or had an ongoing treatment and physician-patient relationship with plaintiff. Accordingly, the ALJ was not compelled to assign significant or controlling weight to the opinions expressed in the MSS. The ALJ properly explained his reasons for affording little weight to the assessment including the lack/length of treatment and contradictory evidence from the state agency psychologist. Moreover, the opinions expressed in the MSS are not supported by progress notes or evidence of objective medical testing. The record does not contain any contemporaneous treatment notes from Miguel of the unidentified physician. While plaintiff argues that the MSS is supported by "objective findings" that plaintiff was angry, anxious and depressed, there is no evidence of such objective findings in the record. Indeed, Ms. Miguel writes, "Ciara reports social anxiety and aggressive disrespectful behavior". At best, the

9

description of plaintiff's demeanor and behavior is based upon plaintiff's subjective complaints. (T. 554).

Plaintiff argues that Miguel's MSS should be afforded greater weight due to support from E. Tom Montague, CASAC.  On February 27, 2008, Montague, a "therapist" with Central New York Services prepared a Bio-Psycho-Social Assessment. (T. 536).  After taking an extensive physical, psychological and social history from plaintiff, Montague concluded, "Ciara presents today with a somewhat depressed mood and restricted affect".  He described her as "unfocused, with average intelligence, poor insight and judgment and impulse control".  Montague diagnosed plaintiff with cannabis depression in sustained remission, alcohol abuse, nicotine dependency and schizophrenia with paranoia. (T. 544).

Plaintiff does not specify what portions of Montague's report support Miguel's opinions but simply states, in conclusory fashion, that her opinion is consistent with Montague, who opined that plaintiff has poor insight, judgment, and impulse control.  Other than the February 27, 2008,assessment, the record lacks any treatment notes, progress notes or any subsequent assessment from Montague.  Montague was not a "treating source" as defined by the Regulations and therefore, for the same reasons noted *supra*, the ALJ was not required to assign controlling weight to his assessment.

Plaintiff also claims that the ALJ improperly considered plaintiff's cessation in treatment when evaluating the weight to afforded to Miguel's MSS.  Whether this factor is considered does not alter the fact that the weight of the substantial evidence supports the ALJ's decision to afford little weight to Miguel's assessment. The ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight and the ALJ sufficiently explained that decision. Based upon the entirety of the medical record, the Court finds the ALJ engaged in a thorough and

meaningful analysis of Miguel's opinion and further, that substantial evidence supports the ALJ's decision to assign only limited weight to Social Worker Miguel's opinions. As such, the Court finds no basis to remand on this issue.

## IV. CREDIBILITY

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence. *See* SSR 96–7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record. SSR 96–7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4),

11

416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.  *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)).  The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).  The ALJ must also consider whether "good reasons" exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82–59; *see also Grubb v. Apfel*, 2003 WL 23009266, at *4–*8 (S.D.N.Y. 2003).

Plaintiff claims that the ALJ's credibility assessment is flawed because the ALJ failed to consider the observations of the social security interviewer in accordance with SSR 96-7.  SSR 96–7p states that "[i]n evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who have previously interviewed the individual, whether in person, or by telephone."  The ALJ must do so in the context of his overall evaluation of the credibility of the individual's statements and "based on a consideration of all the evidence in the case record" rather than basing his conclusions on personal observations alone.  *See* SSR 96-7p; *see also Campbell v. Astrue*, 2012 WL 5178024, at *12 (N.D.Ind. 2012).

Although by ruling an ALJ should consider the comments by an interviewer, when the objective medical evidence contradict those comments, it is not reasonable to conclude that such lay comments would have persuaded the ALJ or any other adjudicator.  *See Wier v. Astrue*, 2008 WL 5046420, at *7 -8  (W.D.Okla. 2008).

On the issue of credibility, the ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible". (T. 32). The ALJ discussed plaintiff's sporadic psychiatric treatment noting that the, "pattern of treatment [ ] is suggestive of the claimant seeking mental health treatment for the purposes of secondary gain". (T. 32). The ALJ noted that plaintiff's allegations of schizophrenia, paranoia and depression were not supported by objective findings. The ALJ also discussed his own observations of plaintiff during two administrative hearings:

> It is noted that the claimant was able to attend to the proceedings at the two hearings held in this case closely and fully without any noted distractions, and she was able to respond to questions in an appropriate manner. (T. 32).

The ALJ discussed plaintiff's activities of daily living, her poor earnings record and her lack of any regular, consistent or intensive treatment for physical impairments. The ALJ noted that plaintiff was prescribed psychotropic medications but that she was "off" the medications for extended periods of time and during the hearing, plaintiff testified that she was "calm" despite being off her medications for many months. (T. 33).

Plaintiff argues that the ALJ's credibility assessment was improper because the ALJ did not discuss the December 1, 2006 observations of the SSA interviewer, R. White. (T. 294). In a Disability Report, White noted that he had a "face to face with claimant" and observed the following:

> clmt smelled and it was apparent that clmt hasn't had a bath in sometime. Clmt had a difficult time sitting thru the interview and expressed on a few occasions that she was feeling really uncomfortable and that she wanted to go home right away. Clmt couldn't remember dates or times of appt. clmt indicated she had been in and out of hospitals all her life. Clmt wanted to get interview over with because she wanted to go home so she was limited on her comments and in answering questions. Clmt indicated she was

>hearing voices and getting scared of the people around her. (T. 293).

The interviewer does not indicate how much time he spent with claimant and the record does not contain any follow up interview, personal or otherwise, by R. White.  White's observations pre-date the ALJ's decision by nearly five years.  Moreover, the ALJ had the opportunity to meet with plaintiff and to observe her demeanor and behavior during two separate hearings. In February 2009, plaintiff testified for approximately one hour, at an administrative hearing before ALJ Flanagan.  (T. 103).  In July 2011, plaintiff appeared before ALJ Flanagan and again testified for nearly one hour.  (T. 134).  A single and unsubstantial omission by the ALJ of lay observations that are not objective in nature, but rather described external behavior within the control of plaintiff, does not necessitate remand.  *See Miles v. Astrue*, 2007 WL 764037, at *3 (E.D.Pa. 2007).  The ALJ has the responsibility of determining credibility, and the conclusions must be accepted unless they are without basis in the record.  *Kliesh v. Chater*, 1996 WL 39438, at *2 (E.D.Pa. 1996) (citing *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978)).  The ALJ was not required to mention or discuss every single piece of evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

Upon a review of the administrative record, the Court finds that the ALJ's properly applied the Regulations and that his credibility analysis is supported by substantial evidence. Accordingly, there is no basis to remand on this issue.

## V.     VOCATIONAL EXPERTS

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability.  *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his

burden by resorting to the applicable grids.[2] *Pratt,* 94 F.3d at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa*, 168 F.3d at 79. Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)". *Id*. at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[3] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id*. The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity". *Id*. at 606. Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 604). Therefore, when considering nonexertional

---

[2] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y.1998).

[3] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez* , 1998 WL 150981, at * 10, n. 12.

impairments, the ALJ must first consider the question-whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony. *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y.2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

The ALJ should elicit testimony from the expert by posing hypothetical questions. If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y.1996). The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater*, 932 F.Supp. 497, 503 (S.D.N.Y.1996). Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir.1983).

In this case, the ALJ posed questions to the vocational expert.  The ALJ inquired as to whether jobs existed in the national economy for individuals of plaintiff's age with the restrictions described in the RFC.  The vocational expert provided examples of jobs that an individual, with such specifications, could perform such as a packager, domestic laundry worker and sorter.  Plaintiff's attorney did not pose any questions to the vocational expert but offered a letter from his own vocational expert.  The ALJ thoroughly discussed and offered specific reasons for rejecting plaintiff's vocational expert's opinions. (T. 35-36).

16

In plaintiff's objection, plaintiff does not address the ALJ's decision regarding her own vocational expert but argues that the ALJ's hypothetical questions to the ALJ's expert were incomplete due to the ALJ's errors in evaluating the RFC and plaintiff's subjective complaints. As discussed previously, the ALJ's RFC and credibility analysis were supported by substantial evidence. Plaintiff has not set forth any other argument with respect to the ALJ's assessment at step five of the sequential analysis. Thus, the Court concludes that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

**It is hereby**

**ORDERED** that the Report-Recommendation (Dkt. No. 17) is adopted in its entirety; it is further;

**ORDERED**, that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk is directed to close the case and enter judgment accordingly; it is further;

**ORDERED** that the Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

Dated:  July 17, 2013
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge